Michael R. Reese (California State Bar No. 206773)
*mreese@reesellp.com*
George V. Granade (California State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

David C. Deal
*david@daviddeal.com*
**THE LAW OFFICE OF DAVID C. DEAL, P.L.C.**
Post Office Box 1042
Crozet, Virginia  22932
Telephone: (434) 233-2727
Facsimile: (888) 965-8083

*Counsel for Plaintiff David Keith Cooper
and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DAVID KEITH COOPER, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INCORPORATED,<br><br>Defendant. | Case No. 5:18-cv-06742<br><br>**COMPLAINT**<br><br>**<u>CLASS ACTION</u>**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff David Keith Cooper ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), brings this Class Action Complaint against Adobe Systems Incorporated ("Adobe" or "Defendant") and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, him. As to all other matters, he bases his allegations on information and belief, through investigation of his counsel. Plaintiff believes substantial evidentiary support exists for his allegations, and he seeks a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     On behalf of himself and the Class members, Plaintiff alleges that Adobe's professional-grade video editing software, Adobe Premiere Pro CC 2017.1 (Version 11.1.0) ("PP2017.1"), permanently deleted Plaintiff's and the Class members' "Files and Data" (defined below), including but not limited to Files and Data that had never been associated with PP2017.1, when Plaintiff and the Class members executed PP2017.1's "Clean Cache" function.

2.     Herein, the term "Files and Data" refers to files and data that (i) were not located within PP2017.1's "Media Cache" folder or any of its subdirectories and (ii) had not been referenced or opened during the 90 days prior to the time that PP2017.1's "Clean Cache" function was executed.

3.     PP2017.1's permanent deletion of Plaintiff's and the Class members' Files and Data constitutes substantial and irrevocable damage to their personal property.

4.     Additionally, Plaintiff and the Class members all suffered financial injuries in that they paid recurring license fees to Adobe on an annual or monthly basis to use PP2017.1 that they would not have paid (or that they would have been willing to pay only in materially lower amounts) had Adobe disclosed that PP2017.1's "Clean Cache" function would permanently delete their Files and Data.

5.     As detailed below, Plaintiff brings this action on behalf of himself and the Class members, seeking declaratory relief, damages, equitable monetary relief, and such further relief as this Court may deem just and proper.

# PARTIES

**Plaintiff David Keith Cooper**

6.     Plaintiff David Keith Cooper resides in Cantonsville, Maryland, and has no intention of changing his residence.

7.     Mr. Cooper is an experienced and sought-after commercial photographer, videographer, and video editor.

8.     Plaintiff has traveled to more than twelve countries on assignment for major editorial, advertising, and governmental organizations.

9.     A partial list of Plaintiff's clients includes: The World Bank, National Geographic, and World Resource Institute.

**Defendant Adobe Systems Incorporated**

10.     Defendant Adobe Systems Incorporated is a corporation organized under the laws of the State of Delaware.

11.     Adobe Systems Incorporated's principal place of business is located at 345 Park Avenue, San Jose, California 95110-2704.

12.     Adobe is a multinational computer software company that focuses on multimedia and creative software programs, including Premiere Pro CC, the industry leading video editing software.

13.     Adobe employs more than 15,000 individuals worldwide.

14.     Adobe owns, operates, and is solely responsible for the content of www.adobe.com.

# JURISDICTION AND VENUE

**Jurisdiction**

15.     This Court has original diversity subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). Plaintiff is a citizen of a different State than Defendant because Plaintiff is a citizen of Maryland and Defendant is a citizen of Delaware and California. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, because Plaintiff suffered financial injuries of approximately $250,000, as detailed herein.

16.     Additionally, this Court has original subject matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Because Plaintiff is a citizen of Maryland and Defendant is a citizen of Delaware and California, at least one member of the plaintiff class is a citizen of a State different from Defendant. Furthermore, Plaintiff alleges the matter in controversy is well in excess of $5,000,000 in the aggregate, exclusive of interest and costs. Finally, Plaintiff alleges "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

17.     This Court has personal jurisdiction over Adobe for reasons including but not limited to the following: Adobe's headquarters are in California. As a result, Adobe has continuous and systematic ties with California such that Adobe is essentially at home here, meaning the Court has general *in personam* jurisdiction over Adobe.

**Venue**

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Adobe, the only defendant, resides within this District. 28 U.S.C. § 1391(b)(1), (d).

**Intradistrict Assignment**

19.     Assignment to the San Jose Division is appropriate under Civil L.R. 3-2(c) and (e) because a substantial part of the events or omissions which gave rise to Plaintiff's claims occurred within Santa Clara County, the location of Adobe's principal place of business.

**ALLEGATIONS COMMON TO ALL CLAIMS**

20.     Adobe Premiere Pro CC is a video editing program designed for creating professional-grade videos for film, television, and the Internet.

21.     On or about April 20, 2017, Adobe released Premiere Pro CC 2017.1 (Version 11.1.0) and made it available to licensees to download and install.

22.     As designed, PP2017.1 creates smaller, temporary files as a user utilizes the program.

23.     The temporary files are made up of portions of existing video footage files.

24.     As designed, PP2017.1, like previous versions of Adobe Premiere Pro CC, utilizes a "Media Cache" folder and subdirectories within the "Media Cache" folder to store the temporary files.

25.     PP2017.1 automatically moves the temporary files to the "Media Cache" folder or its subdirectories.

26.     The default location for the "Media Cache" folder is on the user's computer's internal hard drive.

27.     PP2017.1 has a "Preferences" interface in which users of the program may configure and customize settings including settings for video playback, audio, and the program's appearance.

28.     PP2017.1's "Preference" interface includes a "Clean Cache" function.

29.     When operating properly, the "Clean Cache" function in Adobe Premiere Pro CC should delete only the temporary files within the "Media Cache" folder and its subdirectories.

30.     The "Clean Cache" function in PP2017.1, however, did not delete only the temporary files within the "Media Cache" folder and its subdirectories.

31.     Instead, in PP2017.1, the "Clean Cache" command permanently deleted substantial and numerous Files and Data that were not within the "Media Cache" folder or any of its subdirectories, including but not limited to Files and Data that had never been associated with PP2017.1, so long as the Files and Data had not been referenced or opened during the 90 days prior to the time that Plaintiff or the Class member executed the "Clean Cache" command. *See*

*supra* ¶ 2.

32.   On May 17, 2017, Adobe released an update for Premier Pro CC 2017, version 11.1.1, that Adobe described as follows:

> The 11.1.1 bug-fix update for Premiere Pro addresses an issue with the recently introduced feature to clear the Media Cache Folder automatically after 90 days.
>
> ***The update changes the behavior of the media cache deletion. With 11.1.1, only files that are within the Media Cache folder's subdirectories will be deleted. Files that sit next to it will no longer be affected.*** However, we still strongly recommend keeping the Media Cache folder separate from your original media.

Patrick Palmer, *Premiere Pro 11.1.1 update*, THEBLOG.ADOBE.COM (May 17, 2017), https://theblog.adobe.com/premiere-pro-11-1-1-update/ (emphasis added).

33.   On May 25, 2017, Defendant posted the following on its website under the title "Avoid potential deletion of media files in Premiere Pro CC 2017 (11.1)":

> **Working with the new Premiere Pro CC 2017 (11.1) automatic Media Cache management tools to avoid unintended deletion of user media**
>
> Premiere Pro CC 2017 (11.1) introduced a new feature to manage and automatically remove aging and unnecessary media cache files. This feature was designed to assist users in managing existing project media cache files more easily. In the default location for media cache preferences, there is no issue. However, incorrect usage of this feature has the potential for unintentional file deletion.
>
> To avoid this issue update to Premiere Pro CC 2017 (11.1.1).

ADOBE SYS. INC., *Avoid potential deletion of media files in Premiere Pro CC 2017 (11.1)*, HELPX.ADOBE.COM (2018), https://helpx.adobe.com/premiere-pro/kb/avoid-potential-deletion-of-media-files-in-premiere-pro-cc-2017-.html.

## Adobe Harmed Plaintiff in a Manner Identical to the Manner in which Adobe Harmed the Class Members

34.   Between 2010 and 2017, Plaintiff captured approximately 500 hours of digital video footage (the "Footage").

35.   Plaintiff captured the Footage in locations such as India, Mexico, Turkey, Egypt,

Jordan, Senegal, El Salvador, and Brazil, among others.

36.     The Footage consisted of approximately 100,000 individual digital video clips, ranging from seconds to several minutes in length.

37.     Plaintiff captured the Footage for a variety of clients, including USAID, the World Resources Institute, and PBS, among others.

38.     Plaintiff captured the Footage using professional-grade video equipment, including Canon C100 and Canon 5D Mark II and Mark III cameras and lenses.

39.     Plaintiff estimates that the Footage cost approximately $250,000 to capture and create.

40.     Additionally, Plaintiff receives requests to license clips from the Footage a few times per year.

41.     Plaintiff will typically license a clip from the Footage for around $300, with the exact price for the license depending on the content of the particular clip and the identity of the requester, among other things.

42.     Beginning on June 17, 2013, Plaintiff licensed Adobe Premiere Pro CC software from Defendant for $50 per month.

43.     Plaintiff renewed his license to use Adobe Premiere Pro CC software every month thereafter.

44.     On or about May 1, 2017, approximately two weeks after Adobe released PP2017.1, Plaintiff downloaded and installed PP2017.1.

45.     Approximately two weeks after Plaintiff downloaded and installed PP2017.1, Plaintiff opened the program and performed work, using it to complete a video editing project.

46.     Plaintiff moved the "Media Cache" folder from his computer's internal hard drive to an external hard drive called "Drob01" (the "External Drive") to save storage space on his computer's internal hard drive.

47.     Plaintiff stored the vast majority of his large digital files, including all of the video Footage files, on the External Drive.

48.     Plaintiff organized the External Drive using three main folders: (1) "Videos"; (2)

"Projects"; and (3) "Photographs."

49.     Using the "Preferences" interface in PP2017.1, Plaintiff selected the Videos folder on his External Drive for the location of the program's "Media Cache" folder and its subdirectories.

50.     While working on the project described above, Plaintiff opened the "Preferences" interface for PP2017.1 and executed the "Clean Cache" command.

51.     As discussed above, if PP2017.1 had been operating properly, PP2017.1 should have responded to Plaintiff's "Clean Cache" command by deleting files stored only in the "Media Cache" folder and its subdirectories on Plaintiff's External Drive.

52.     Instead, PP2017.1 permanently deleted all of Plaintiff's files on his External Drive that had not been referenced or opened within the previous 90 days and that were within the route directory of "/Videos" (i.e., files located in the Videos folder or any subfolder of the Videos folder). These files included Premiere Pro CC 2017.1 (.pproj), Apple Final Cut Pro (.FCPROJECT), PDF (.pdf), Microsoft Word (.doc, .docx), audio (.wav, .mp3), JPEG (.jpg), and Adobe Photoshop (.psd) files. Among the files that PP2017.1's "Clean Cache" function permanently deleted was all of the valuable video Footage described above that had not been referenced or opened within the 90 days prior to Plaintiff's execution of the "Clean Cache" function.

53.     Plaintiff's permanently deleted Files and Data included Files and Data that Plaintiff had not previously imported into PP2017.1 during the course of his use and operation of PP2017.1, and they included Files and Data that PP2017.1 had not generated.

54.     Following the deletion of his Files and Data, Plaintiff downloaded and ran Data Rescue 4 ("Rescue"), a file recovery software program, in an attempt to recover the deleted files.

55.     Rescue took *three days* to perform its search and recover function.

56.     While Rescue was able to locate the deleted folders, the folders were empty, and the contents of the deleted folders could not be recovered.

57.     Thus, PP2017.1's "Clean Cache" function *permanently* deleted Plaintiff's Files and Data, including but not limited to all of his valuable video Footage that had not been

referenced or opened within the 90 days prior to Plaintiff's execution of the "Clean Cache" command.

58.     Plaintiff is in the same Class as all other Class members during the relevant time period.

59.     PP2017.1 permanently deleted Plaintiff's and the Class members' Files and Data without any authorization, adequate warning, or prior disclosure that it would do so.

60.     Plaintiff suffered substantial property damages in that he permanently lost substantial and numerous Files and Data when he executed PP2017.1's "Clean Cache" function. Similarly, the Class members all suffered substantial property damages in that each Class member permanently lost Files and Data when they executed the "Clean Cache" function.

61.     Additionally, Plaintiff and the Class members all suffered financial injuries because they all paid recurring annual or monthly fees to Adobe for licenses allowing them to use PP2017.1.

62.     Plaintiff and the Class members would not have paid these fees, or would have only been willing to pay materially lower amounts, if Adobe had notified them that PP2017.1's "Clean Cache" function would permanently delete their Files and Data.

63.     Adobe made material omissions upon which Plaintiff and the Class members relied, causing them financial injury. Adobe failed to disclose to Plaintiff and the Class members that PP2017.1's "Clean Cache" function would permanently delete their Files and Data, and Plaintiff and the Class members suffered financial injuries on account of Adobe's omissions in that (i) PP2017.1's "Clean Cache" function permanently deleted Plaintiff's and the Class members' Files and Data and (ii) Plaintiff and the Class members paid recurring annual or monthly fees to Adobe for PP2017.1 that they would not have paid (or fees that were in materially higher amounts than they would have been willing to pay), had they known the truth that Adobe omitted, i.e., that PP2017.1's "Clean Cache" function would permanently delete their Files and Data.

## NUMEROUS SIMILAR COMPLAINTS EXIST REGARDING THE SAME ISSUE

64.     Plaintiff is not the only person to have suffered due to Adobe's misconduct and negligence.   There are numerous complaints regarding the same issue.   As explained by one person on an Adobe message board:

> yesterday I upgraded to the latest iteration of PP 2017... today when I open my 2 main projects all of the Sony F55 and Fs5 .mxf files have been deleted from the XDROOT folders... this is a real kick in the guts!!! I am shaking with anxiety

https://forums.adobe.com/thread/2307613 (steveh17702721 Apr 24, 2017).

65.     And as stated by another consumer:

> This exact same thing happened to me this morning. I was working on my project last night just fine. I opened it this morning after the update, it converted my file, and whole folders of media are just gone.

https://forums.adobe.com/thread/2307613 (rachels41312069 Apr 25, 2017 9:34 AM)

66.     And as complained about by another consumer:

> This literally just happened to me. I swear that I did nothing to cause this was there one moment and gone the next. About 80% of the media for my project just disappeared. The folders all indicate that they were modified at exactly the same time.... I'm furious right now

https://forums.adobe.com/thread/2307613 userjond80202700 on May 4, 2017:

67.     And as stated by another consumer:

> UNBELIEVEABLE DEVASTATION. Everything wiped!
> It just happened to me.

(https://forums.adobe.com/thread/2307613 (Daniel108 Sep 26, 2017 11:55 PM)

1

## CLASS ACTION ALLEGATIONS

2      68.      Pursuant to Rule 23(a) and (b)(3) and (c)(4) of the Federal Rules of Civil

3   Procedure, Plaintiff brings this action on behalf of himself and a proposed class (the "Nationwide

4   Class") defined as follows:

5          **The Nationwide Class.** All persons in the United States who
           purchased, licensed or otherwise acquired PP2017.1 from Adobe
6          and whose Files and Data PP2017.1 deleted when they performed
           PP2017.1's "Clean Cache" function.
7

8          Excluded from the Nationwide Class are: (a) Defendant,
           Defendant's board members, executive-level officers, and
9          attorneys, and immediately family members of any of the
           foregoing persons; (b) governmental entities; (c) the Court, the
10         Court's immediate family, and the Court staff; and (d) any person
           that timely and properly excludes himself or herself from the Class
11         in accordance with Court-approved procedures.

12

13

14      69.      Pursuant to Rule 23(a) and (b)(2), Plaintiff brings this action on behalf of himself

15   and a proposed class (the "Declaratory Relief Class") defined as follows:

16         **The Declaratory Relief Class.** All persons in the United States
           who purchased, licensed or otherwise acquired PP2017.1 from
17         Adobe and whose Files and Data PP2017.1 deleted when they
           performed PP2017.1's "Clean Cache" function.
18

19         Excluded from the Declaratory Relief Class are: (a) Defendant,
           Defendant's board members, executive-level officers, and
20         attorneys, and immediately family members of any of the
           foregoing persons; (b) governmental entities; (c) the Court, the
21         Court's immediate family, and the Court staff; and (d) any person
           that timely and properly excludes himself or herself from the Class
22         in accordance with Court-approved procedures.

23         The Declaratory Relief Class seeks entry of an Order declaring
           Adobe is liable for negligence and is strictly liable for defective
24         design of PP2017.1, as set forth below.

25      70.      Pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action on behalf of himself

26   and a proposed class (the "Maryland Class") defined as follows:

27         **The Maryland Class.** All Maryland residents who purchased,
28         licensed or otherwise acquired PP2017.1 from Adobe and whose

Files and Data PP2017.1 deleted when they performed PP2017.1's "Clean Cache" function.

Excluded from the Maryland Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

71.     Pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action on behalf of himself and a proposed class (the "Unjust Enrichment Class") defined as follows:

**The Unjust Enrichment Class.** All persons in the United States who licensed PP2017.1 from Adobe and whose Files and Data PP2017.1 deleted when they performed PP2017.1's "Clean Cache" function.

Excluded from the Unjust Enrichment Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

72.     Collectively, the Nationwide Class, the Declaratory Relief Class, the Maryland Class, and the Unjust Enrichment Class are the "Class."

73.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

74.     <u>Numerosity, Rule 23(a)(1)</u>: The size of the Class is so large that joinder of all Class members is impracticable. Due to the nature of Defendant's business, Plaintiff believes there are at least dozens of Class members geographically dispersed throughout the United States. *See* ADOBE SYS. INC., *Media files deleted after 2017.1 upgrade*, FORUMS.ADOBE.COM

1 │ (Mar. 30, 2018 9:35 PM), https://forums.adobe.com/thread/2306406.

2 │     75.    <u>Existence and Predominance of Common Questions of Law and Fact, Rule

3 │ 23(a)(2), (b)(3)</u>: There are questions of law and fact common to the Class. These questions

4 │ predominate over any questions affect only individual Class members.

5 │     76.    All of the Class members had the same experience that is at the core of this case:

6 │ when all of the Class members executed PP2017.1's "Clean Cache" function, PP2017.1

7 │ permanently deleted their Files and Data.

8 │     77.    Furthermore, legal and factual questions that are common to the Class as a whole,

9 │ or to the Nationwide Class, the Declaratory Relief Class, the Maryland Class, and the Unjust

10 │ Enrichment Class, include but are not limited to:

11 │       a.    whether Adobe engaged in the course of conduct set out herein;

12 │       b.    whether Adobe designed, advertised, marketed, distributed, licensed,

13 │     and/or otherwise placed PP2017.1 into the stream of commerce throughout

14 │     the United States and in Maryland;

15 │       c.    with respect to the Nationwide Class and the Declaratory Relief Class:

16 │       (i)    whether Adobe breached a duty of care that it owed Plaintiff and

17 │     the members of the Nationwide Class and the Declaratory Relief

18 │     Class with respect to the manner in which it designed PP2017.1;

19 │       (ii)    whether such a breach caused injury to Plaintiff and the members

20 │     of the Nationwide Class and the Declaratory Relief Class;

21 │       (iii)    whether PP2017.1 suffers from a design defect under the consumer

22 │     expectations test under California law;

23 │       (iv)    whether PP2017.1 suffers from a design defect under the risk-

24 │     benefit test under California law; and

25 │       (v)    whether a design defect in PP2017.1 caused injury to Plaintiff and

26 │     the members of the Nationwide Class and the Declaratory Relief

27 │     Class;

28 │       d.    with respect to the Maryland Class:

(i) whether Adobe made material omissions in connection with licensing of PP2017.1 to Plaintiff and the Maryland Class members, upon which Plaintiff and the Maryland Class members relied; and

(ii) whether Plaintiff and the Maryland Class members are entitled to actual or other forms of damages and other monetary relief; and

e. with respect to the Unjust Enrichment Class:

(i) whether Adobe's collection of fees to license PP2017.1 from Plaintiff and the Unjust Enrichment Class members unjustly enriched Adobe at the expense of Plaintiff and the Unjust Enrichment Class members;

(ii) whether Plaintiff and the Unjust Enrichment Class members are entitled to equitable relief.

78. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

79. Typicality, Rule 23(a)(3): Plaintiff's claims are typical of the claims of the Class members because Defendant injured all Class members through the uniform misconduct described herein; all Class members were subject to the same conduct by Defendant, in that when all of the Class members executed PP2017.1's "Clean Cache" function, PP2017.1 deleted their Files and Data; and Plaintiff seeks the same relief as the Class members.

80. Furthermore, there are no defenses available to Adobe that are unique to Plaintiff.

81. Adequacy of Representation, Rule 23(a)(4): Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress

against Defendant. Furthermore, Plaintiff has selected competent counsel that are experienced in class action and other complex litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

82.    <u>Declaratory Relief, Rule 23(b)(2)</u>: Adobe has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final declaratory relief is appropriate respecting the Declaratory Relief Class as a whole.

83.    <u>Superiority, Rule 23(b)(3)</u>: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

a.    The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

b.    It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c.    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.

d.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

**84.**    <u>Notice</u>: Plaintiff and his counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice. **CLAIMS**

**FIRST CLAIM**

**Negligence under California Law**

**On Behalf of the Nationwide Class and the Declaratory Relief Class**

85.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

86.     Plaintiff brings this claim for negligence under California law on behalf of the Nationwide Class and the Declaratory Relief Class.

87.     Under California law, the elements of a negligence cause of action are: the defendant had a duty to use due care, the defendant breached that duty, and the breach was the proximate or legal cause of the resulting injury.

88.     Adobe owed a duty to Plaintiff and the members of the Nationwide Class and the Declaratory Relief Class to use reasonable care to ensure that the PP2017.1 software's "Clean Cache" command was safe, reliable, and functional or, at the very least, would not permanently delete users' Files and Data, including but not limited to Files and Data that had never been associated with PP2017.1, when the users executed the command.

89.     Adobe also owed a duty to Plaintiff and the members of the Nationwide Class and the Declaratory Relief Class to disclose that the PP2017.1 software's "Clean Cache" function could trigger permanent deletion of their Files and Data, including but not limited to Files and Data that had never been associated with PP2017.1.

90.     Adobe's duties arose from its design, creation, manufacture, distribution, and provision of the PP2017.1 software to Plaintiff and the members of the Nationwide Class and the Declaratory Relief Class.

91.     Adobe knew or should have known that the PP2017.1 software's "Clean Cache" function would trigger permanent deletion of consumers' Files and Data, including Files and Data that had never been associated with PP2017.1, because Adobe designed the PP2017.1 software and controlled how the PP2017.1 software's "Clean Cache" function would affect the files and data that were present on the consumer's hard drive in which the "Media Cache" folder was located.

92.     Adobe breached its duties by failing to use reasonable measures to ensure the PP2017.1 software's "Clean Cache" function would not permanently delete consumers' Files and Data and/or by failing to warn or disclose that using the "Clean Cache" function could permanently delete Files and Data, including Files and Data that had never been associated with PP2017.1.

93.     It was reasonably foreseeable that Adobe's breach of its duties would result in injury to Plaintiff and the members of the Nationwide Class and the Declaratory Relief Class, including but not limited to the permanent loss of their Files and Data, the cost of any services utilized in an attempt to recover the deleted Files and Data, and the cost of purchasing replacement software.

94.     Plaintiff and the members of the Nationwide Class and the Declaratory Relief Class seek an Order declaring that Adobe is liable for negligence under California law. If they obtain such an Order, the members of the Nationwide Class and the Declaratory Relief Class may show their damages (including compensatory, incidental, and consequential damages) in separate proceedings.

95.     Plaintiff individually seeks damages (including compensatory, incidental, and consequential damages) for the permanent loss of his Files and Data in connection with this proceeding, as well as damages compensating him for the cost of the Rescue service he utilized in an attempt to recover his deleted Files and Data.

96.     On behalf of himself and the members of the Nationwide Class and the Declaratory Relief Class, Plaintiff also seeks such further relief as this Court may deem just and proper.

97.     Therefore, Plaintiff prays for relief as set forth below.

1

**SECOND CLAIM**

2

**Strict Products Liability for Defective Design under California Law**

3

**On Behalf of the Nationwide Class and the Declaratory Relief Class**

4   98.   Plaintiff repeats each and every allegation contained in the paragraphs above and

5   incorporates such allegations by reference herein.

6   99.   Plaintiff brings this claim for strict products liability for defective design under

7   California law on behalf of the Nationwide Class and the Declaratory Relief Class.

8   100.   The elements of a strict products liability cause of action under California law are

9   a defect in the manufacture or design of the product or a failure to warn, causation, and physical

10   injury or property damage.

11   101.   A product may be found defective in design under either of two tests: the

12   "consumer expectations" test or the "risk-benefit" test.

13   102.   As detailed below, PP2017.1 is defectively designed under the consumer

14   expectations test. Alternatively, PP2017.1 is defectively designed under the risk-benefit test.

15   103.   Under the consumer expectations test, a product's design is defective if it fails to

16   perform as safely as an ordinary consumer would expect when used in an intended or reasonably

17   foreseeable manner. To plead under the consumer expectations test, plaintiffs must describe how

18   the product failed to meet the minimum safety expectations of an ordinary consumer of the

19   product.

20   104.   An ordinary consumer of PP2017.1 would not expect that the product would

21   permanently delete Files and Data outside of the "Media Cache" folder, including but not limited

22   to Files and Data that had never been associated with PP2017.1, when the consumer used the

23   "Clean Cache" function.

24   105.   PP2017.1 did not meet the minimum expectations of an ordinary consumer

25   because, as detailed above, when consumers used the "Clean Cache" function, the program

26   permanently deleted Files and Data outside of the "Media Cache" folder, including but not

27   limited to Files and Data that had never been associated with PP2017.1.

28

106. Consequently, PP2017.1 is defectively designed under the consumer expectations test.

107. Under the risk-benefit test, a product may be found defective in design, even if it satisfies ordinary consumer expectations, if the risk of danger inherent in the challenged design outweighs the benefits of such design. To plead under the risk-benefit test, plaintiffs must allege that the risks of the design outweigh the benefits, and then explain how the particular design of the product caused the harm.

108. The risks of the PP2017.1 software's "Clean Cache" function are that, as detailed above, the "Clean Cache" function will permanently delete Files and Data that are outside of the "Media Cache" folder, including but not limited to Files and Data that had never been associated with PP2017.1.

109. The benefits of the PP2017.1 software's "Clean Cache" function are that, assuming that it did not malfunction, it would delete only temporary files within the "Media Cache" folder, which would clear up hard drive space.

110. The risks of the "Clean Cache" function far outweigh its benefits because permanent deletion of potentially large numbers of valuable Files and Data is potentially highly costly, as it was in the case of the deletion of Plaintiff's Files and Data described above, while the benefit of additional hard drive space is relatively minimal.

111. Consequently, PP2017.1 is defectively designed under the risk-benefit test.

112. Additionally, Adobe failed to warn Plaintiff and the members of the Nationwide Class and the Declaratory Relief Class that PP2017.1 was defectively designed in that the "Clean Cache" function would permanently delete their Files and Data.

113. The defective design of PP2017's "Clean Cache" function caused substantial and irrevocable property damage to Plaintiff and the members of the Nationwide Class and the Declaratory Relief Class because when Plaintiff and the members of the Nationwide Class and the Declaratory Relief Class executed the "Clean Cache" command, PP2017.1 permanently deleted their Files and Data.

114. Plaintiff and the members of the Nationwide Class and the Declaratory Relief

1   Class seek an Order declaring that Adobe is strictly liable for the defective design of PP2017.1

2   under California law. If they obtain such an Order, the members of the Nationwide Class and the

3   Declaratory Relief Class may show their damages (including compensatory, incidental, and

4   consequential damages) in separate proceedings.

5        115.   Plaintiff individually seeks damages (including compensatory, incidental, and

6   consequential damages) for the permanent loss of his Files and Data in connection with this

7   proceeding, as well as damages compensating him for the cost of the Rescue service he utilized

8   in an attempt to recover his deleted Files and Data.

9        116.   On behalf of himself and the members of the Nationwide Class and the

10   Declaratory Relief Class, Plaintiff also seeks such further relief as this Court may deem just and

11   proper.

12        117.   Therefore, Plaintiff prays for relief as set forth below.

13   **THIRD CLAIM**

14   **Violation of California's Consumers Legal Remedies Act ("CLRA"),**

15   **California Civil Code §§ 1750, *et seq*.**

16   **On Behalf of the Declaratory Relief Class**

17   **(Injunctive Relief Only)**

18        118.   Plaintiff brings this claim individually and on behalf of the members of the

19   proposed Nationwide Class against Defendant.

20        119.   The PP2017.1 software is  a "good" within the meaning of Cal. Civ. Code §

21   1761(a), and the payments for the software by Plaintiff and members of the Declaratory Relief

22   Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

23        120.   Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of

24   a particular standard, quality, or grade, or that goods are of a particular style of model, if they are

25   another."  Defendant has violated section 1770(a)(7) of the CLRA.

26        121.   Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent

27   not to sell them as advertised."  Defendant has violated section 1770(a)(9) of the CLRA.

28

**FOURTH CLAIM**

**Violation of California's Unfair Competition Law ("UCL"),**

**California Business & Professions Code §§ 17200, *et seq.***

**On Behalf of the Nationwide Class**

122.    Plaintiff repeats the allegations contained above as if fully set forth herein.

123.    Plaintiff bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

124.    UCL §17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

125.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

126.    Defendant's conduct was and continues to be "unlawful" because it violates the CLRA and other applicable laws as described herein.

127.    As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff, and members of the Nationwide Class.

128.    Under the UCL, a business act or practice is "unfair" if the Defendant' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

129.    Defendant's conduct was and continues to be of no benefit to the members of the Nationwide Class, as it is false, misleading, unfair, and unlawful.   Therefore, Defendant's conduct was "unfair."

130.    As a result of Defendant's unfair business acts and practices, Defendant has and continue to unfairly obtain money from Plaintiff, and members of the Nationwide Class.

131.    Plaintiff requests that this Court cause Defendant to restore this unlawfully and unfairly obtained money to Plaintiff and members of the Nationwide Class, to disgorge the

1   profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or

2   violating it in the same fashion in the future as discussed herein.   Otherwise, Plaintiff, and

3   members of the Nationwide Class may be irreparably harmed and/or denied an effective and

4   complete remedy if such an order is not granted.

5

6   **FIFTH CLAIM**

7   **Violation of Maryland's Consumer Protection Act**

8   **MD. CODE ANN., COM. LAW § 13-101 *et seq.***

9   **On Behalf of the Maryland Class**

10   132.   Plaintiff repeats each and every allegation contained in the paragraphs above and

11   incorporates such allegations by reference herein.

12   133.   Plaintiff brings this claim on behalf of the Maryland Class for violation of

13   Maryland's Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-101 *et seq.*

14   134.   Under Maryland's Consumer Protection Act, "[a] person may not engage in any

15   unfair or deceptive trade practice, as defined in this subtitle or as further defined by the Division,

16   in: (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or

17   consumer services; (2) The offer for sale, lease, rental, loan, or bailment of consumer goods,

18   consumer realty, or consumer services . . . ." MD. CODE ANN., COM. LAW § 13-303(1)–(2).

19   135.   Under Maryland's Consumer Protection Act, "consumer goods" and "consumer

20   services" mean, respectively, "goods . . . and services which are primarily for personal,

21   household, family, or agricultural purposes." *Id.* § 13-101(d)(1).

22   136.   Under Maryland's Consumer Protection Act, "consumer" means "an actual or

23   prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer

24   realty, or consumer credit." *Id.* § 13-101(c)(1). Under Maryland's Consumer Protection Act,

25   "consumer" includes "[a] licensee or recipient of computer information or computer programs

26   under a consumer contract as defined in § 22-102 of this article." *Id.* § 13-101(c)(2).

27   137.   Plaintiff and the Maryland Class members are "consumers" under Maryland's

28   Consumer Protection Act because they licensed PP2017.1 from Adobe primarily for personal,

household, or family purposes.

138.   To bring an action under the Maryland Consumer Protection Act, a plaintiff must allege (1) an unfair or deceptive trade practice that (2) is relied upon, and (3) causes the plaintiff actual injury.

139.   Under Maryland's Consumer Protection Act, unfair or deceptive trade practices include, among other things, any "[f]ailure to state a material fact if the failure deceives or tends to deceive." MD. CODE ANN., COM. LAW § 13-301(3). Thus, Maryland's Consumer Protection Act provides consumers with protection against omissions of material fact.

140.   Omissions of fact are material under Maryland's Consumer Protection Act if a significant number of unsophisticated consumers would find the omitted information important in determining a course of action.

141.   In violation of Maryland's Consumer Protection Act, Adobe engaged in unfair or deceptive trade practices because Adobe made material omissions upon which Plaintiff and the Maryland Class members relied, causing them financial injury.

142.   Adobe failed to disclose to Plaintiff and the Maryland Class members the material fact that PP2017.1's "Clean Cache" function would permanently delete their Files and Data (as defined above).

143.   This omission was material because a significant number of unsophisticated consumers would find the omitted information important in determining whether to license PP2017.1 and in determining whether to execute the "Clean Cache" command.

144.   Plaintiff and the Maryland Class members suffered damages in reliance on Adobe's omissions for two independent reasons:

        a.   PP2017.1's "Clean Cache" function permanently deleted Plaintiff's and the Maryland Class members' Files and Data, when Plaintiff and the Maryland Class members would not have executed the "Clean Cache" command had they been aware of the omitted information, and

        b.   Plaintiff and the Maryland Class members paid recurring annual or monthly fees to Adobe to license PP2017.1 that they would not have paid

1    (or fees that were in materially higher amounts than they would have been

2    willing to pay), had they known the truth that Adobe omitted, i.e., that

3    PP2017.1's "Clean Cache" function would permanently delete their Files

4    and Data.

5    145.    Plaintiff and the members of the Maryland Class seek an Order declaring that

6    Adobe's conduct described above violated Maryland's Consumer Protection Act and an award of

7    damages pursuant to the Consumer Protection Act compensating them for the recurring annual or

8    monthly license fees they paid Adobe in reliance on Adobe's material omissions. MD. CODE

9    ANN., COM. LAW § 13-408(b). Additionally, if they obtain such an Order, the members of the

10   Maryland Class may show the damages the suffered on account of the permanent loss of their

11   Files and Data in separate proceedings.

12   146.    Plaintiff individually seeks damages under Maryland's Consumer Protection Act

13   (including compensatory, incidental, and consequential damages) for the permanent loss of his

14   Files and Data in connection with this proceeding, as well as damages compensating him for the

15   cost of the Rescue service he utilized in an attempt to recover his deleted Files and Data. MD.

16   CODE ANN., COM. LAW § 13-408(b).

17   147.    Pursuant to Maryland's Consumer Protection Act, Plaintiff seeks reasonable

18   attorney's fees and costs. MD. CODE ANN., COM. LAW § 13-408(b).

19   148.    On behalf of himself and the members of the Maryland Class, Plaintiff also seeks

20   such further relief as this Court may deem just and proper.

21   149.    Therefore, Plaintiff prays for relief as set forth below.

22                                **SIXTH CLAIM**

23                **Restitution / Unjust Enrichment under California Law**

24                    **On Behalf of the Unjust Enrichment Class**

25   150.    Plaintiff repeats each and every allegation contained in the paragraphs above and

26   incorporates such allegations by reference herein.

27   151.    Plaintiff brings this claim for restitution / unjust enrichment under California law

28   on behalf of the Unjust Enrichment Class.

152.    By licensing PP2017.1 to Plaintiff and the Unjust Enrichment Class members for fees yet failing to disclose to them the material fact that PP2017.1's "Clean Cache" function would permanently delete their Files and Data, Adobe has engaged in inequitable conduct and has received a benefit at the expense of Plaintiff and the Unjust Enrichment Class members.

153.    Each time they paid a recurring annual or monthly fee to license PP2017.1, at the time they made the fee payment, Plaintiff and the Unjust Enrichment Class members conferred a benefit—i.e., money and substantial revenue—on Adobe.

154.    The profits and/or benefits Adobe obtained through licensing PP2017.1 to Plaintiff and the Unjust Enrichment Class members for a fee are to the determent of Plaintiff and the Unjust Enrichment Class members and violate the fundamental principles of justice, equity, and good conscience, because Plaintiff and the Unjust Enrichment Class members would not have paid the fees (or would have been willing to pay only materially lower fees) had they known the material information that Adobe failed to disclose, i.e., PP2017.1's "Clean Cache" function would permanently delete their Files and Data.

155.    It would violate fundamental principles of justice, equity, and good conscience to allow Adobe to retain the benefits that it obtained from Plaintiff and the Unjust Enrichment Class members as set forth above.

156.    Plaintiff and the members of the Unjust Enrichment Class seek an Order declaring that Adobe has been unjustly enriched as set forth above and restitution of the recurring annual or monthly license fees they paid Adobe for PP2017.1, which unjustly enriched it.

157.    On behalf of himself and the members of the Unjust Enrichment Class, Plaintiff also seeks such further relief as this Court may deem just and proper.

158.    Therefore, Plaintiff prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A.     certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.     declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.     declaring that Defendant has committed the violations of law alleged herein;

D.     awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

E.     providing for any and all equitable monetary relief the Court deems appropriate;

F.     awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees;

G.     awarding pre- and post-judgment interest to the extent the law allows; and

H.     providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date: November 7, 2018                              Respectfully submitted,

                                                   **REESE LLP**

                                          By:  _/s/ Michael R. Reese_
                                                   Michael R. Reese (State Bar No. 206773)
                                                   *mreese@reesellp.com*
                                                   George V. Granade (State Bar No. 316050)
                                                   *ggranade@reesellp.com*
                                                   100 West 93rd Street, 16th Floor
                                                   New York, New York  10025
                                                   Telephone: (212) 643-0500
                                                   Facsimile: (212) 253-4272

                                                   **THE LAW OFFICE OF**
                                                   **DAVID C. DEAL, P.L.C.**
                                                   David C. Deal
                                                   *david@daviddeal.com*
                                                   Post Office Box 1042
                                                   Crozet, Virginia  22932
                                                   Telephone: (434) 233-2727
                                                   Facsimile: (888) 965-8083

                                                   *Counsel for Plaintiff David Keith Cooper*
                                                   *and the Proposed Class*