# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| DAVID KEITH COOPER,<br>Plaintiff,<br>v.<br>ADOBE SYSTEMS INCORPORATED,<br>Defendant. | Case No. 18-cv-06742-BLF<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING THE CASE PENDING ARBITRATION; DENYING MOTION TO DISMISS CLASS CLAIMS**<br><br>[RE: ECF 16; 18] |

Plaintiff David Cooper ("Cooper" or "Plaintiff"), a commercial photographer, videographer, and video editor, brings claims on behalf of himself and a putative class of others similarly situated against Adobe Systems Incorporated ("Adobe" or "Defendant") for violations of various California laws and Maryland's Consumer Protection Act arising from Cooper's use of one of Adobe's video editing software programs. Cooper alleges that Adobe Premiere Pro CC 2017.1 (Version 11.1.0) ("PP2017.1") malfunctioned and permanently deleted Cooper's files and data, including those not associated with the PP2017.1. Before the Court is Adobe's Motion to Compel Arbitration, Dismiss Class Claims, and Stay All Proceedings. Motion, ECF 16. Cooper opposes the motion. Opp'n, ECF 34. Adobe has replied. Reply, ECF 35. The Court heard oral arguments on September 18, 2019.

## I. BACKGROUND

Cooper is a commercial photographer, videographer, and video editor, who has traveled to several countries on assignments for editorial, advertising, and governmental organizations. Compl. ¶¶ 7-9. Between 2010 and 2017, Cooper captured approximately 500 hours of digital video footage for a variety of his clients in several countries, using professional equipment. *Id.* ¶¶ 34-38.

Adobe Premiere Pro CC is a video editing program designed for creating professional-grade videos for film, television, and the Internet. *Id.* ¶ 20. Cooper first licensed Adobe Premiere Pro CC software on June 17, 2013, for $50 per month and renewed his license every month thereafter. *Id.* ¶¶ 42-43. On April 19, 2017, Adobe released an updated version of Premiere Pro CC: PP2017.1. Motion at 2; Compl. ¶ 21. Approximately two weeks after its release, Cooper downloaded and installed PP2017.1. Compl. ¶ 44. Approximately two weeks after that, Cooper opened PP2017.1 and used it to complete a video editing project. *Id.* ¶ 45.

As designed, when a user utilizes Premiere Pro CC, the program creates smaller, temporary files, which it automatically moves to store in a "Media Cache" folder and subdirectories. *Id.* ¶¶ 22-25. PP2017.1's "Preference" interface includes a "Clean Cache" function. *Id.* ¶ 28. When operating properly, the "Clean Cache" function deletes only the temporary files within the "Media Cache" folder and its subdirectories. *Id.* ¶ 29.

When Cooper used PP2017.1 in May 2017, he moved the "Media Cache" folder from his computer's internal hard drive to an external hard drive, where he stored most of his large digital files, including all his video footage files. *Id.* ¶¶ 46-47. Cooper organized his external hard drive in three main folders: (1) "Videos," (2) "Projects," and (3) "Photographs." *Id.* ¶ 48. Cooper selected the Videos folder on his external drive for the location of PP2017.1's "Media Cache" folder and its subdirectories. *Id.* ¶ 49. When Cooper executed the "Clean Cache" command in PP2017.1, instead of deleting only the temporary files within the "Media Cache" folder and its subdirectories, the program permanently deleted all the files on Cooper's external hard drive that (1) had not been referenced or opened within the previous 90 days and (2) were located in the Videos folder and its subfolders. *Id.* ¶¶ 50-52. The deleted files included some that were not imported into or generated by PP2017.1. *Id.* ¶ 53. Cooper was unable to recover his files. *Id.* ¶¶ 54-57. Other PP2017.1 users reported similar unintended deletion of files. *Id.* ¶¶ 64-67.

In an apparent acknowledgement of a problem with the media cache deletion feature in PP2017.1, on May 17, 2017, Adobe released an updated version of the program (Premier Pro CC 2017, version 11.1.1), that Adobe described as follows:

> The 11.1.1 bug-fix update for Premiere Pro addresses an issue with

2

> the recently introduced feature to clear the Media Cache Folder automatically after 90 days.
>
> The update changes the behavior of the media cache deletion. With 11.1.1, only files that are within the Media Cache folder's subdirectories will be deleted. Files that sit next to it will no longer be affected. However, we still strongly recommend keeping the Media Cache folder separate from your original media.

Compl. ¶ 32; ECF 18-1 (Patrick Palmer, Premiere Pro 11.1.1 update, THEBLOG. ADOBE.COM (May 17, 2017), https://theblog.adobe.com/premiere-pro-11-1-1-update/).

On May 25, 2017, Adobe posted the following on its website under the title "Avoid potential deletion of media files in Premiere Pro CC 2017 (11.1)":

> **Working with the new Premiere Pro CC 2017 (11.1) automatic Media Cache management tools to avoid unintended deletion of user media**
>
> Premiere Pro CC 2017 (11.1) introduced a new feature to manage and automatically remove aging and unnecessary media cache files. This feature was designed to assist users in managing existing project media cache files more easily. In the default location for media cache preferences, there is no issue. However, incorrect usage of this feature has the potential for unintentional file deletion.
>
> To avoid this issue update to Premiere Pro CC 2017 (11.1.1).

Compl. ¶ 33; ECF 18-2 (ADOBE SYS. INC., *Avoid potential deletion of media files in Premiere Pro CC 2017 (11.1)*, HELPX.ADOBE.COM (2018), https://helpx.adobe.com/premiere-pro/kb/avoid-potential-deletion-of-media-files-in-premiere-pro-cc-2017-.html).

Adobe does not dispute that PP2017.1 was defective, but it notes that Cooper's allegations acknowledge that "Adobe promptly took steps to address this issue by releasing a new version of Premiere Pro, and by notifying customers of the issue and informing them of ways to avoid inadvertent deletion of files while using the program." Opp'n at 4.

Cooper brings the following claims against Adobe on behalf of himself and similarly-situated individuals: (1) Negligence under California Law; (2) Strict Products Liability for Defective Design under California Law; (3) Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.* (Injunctive relief only); (4) Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*; (5) Violation of Maryland's Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-

101 *et seq.*; and (6) Restitution / Unjust Enrichment under California Law. Compl. ¶¶ 85-157.

## II.　THE ARBITRATION AGREEMENT

According to Adobe (and not disputed by Cooper), "Creative Cloud" is a suite of applications and services that offers a variety of tools to perform creative work, such as image compositing, photo and video editing, web design, and digital painting. Motion at 1-2. All Creative Cloud users are required to "view and affirmatively agree to Adobe's General Terms of Use" through a pop-up interface. *Id.* at 2. This pop-up interface is titled "Terms of Use" and presents the customer with a scrollable textbox containing the most current version of Adobe's Terms of Use, applicable to all Creative Cloud software. *Id.* Without an affirmative agreement to the General Terms of Use, users "cannot continue using any Creative Cloud program or service." *Id.* One of the software applications Adobe makes available through its Creative Cloud subscription plans is Premiere Pro—the program at issue in this case. *Id.* Lightroom CC ("Lightroom"), a photography software program, is another application available through Adobe's Creative Cloud. *Id.*

Adobe's General Terms of Use were updated on June 16, 2016. Motion at 2. On June 18, 2016, Cooper was presented with Adobe's General Terms of Use of through a pop-up interface in Lightroom. *Id.* Cooper was presented with Adobe's General Terms of Use in connection with Lightroom, and not Premier Pro CC, because Lightroom was the first Creative Cloud program Cooper accessed after the Terms of Use were updated. *Id.* Cooper clicked the box affirming "I have read and agree to" the Terms of Use. *Id.* at 2-3.

Adobe's General Terms of Use provide:

> These terms govern your use of our website or services such as the Creative Cloud (collectively, "Services") and software that we include as part of the Services, including any applications, Content Files (defined below), scripts, instruction sets, and any related documentation (collectively "Software"). By using the Services or Software, you agree to these terms.

Motion at 3; ECF 16-2 at Preamble.

Section 13 of Adobe's General Terms of Use, titled "Dispute Resolution" provides, in relevant parts:

> 13.1 **Process.** For any concern or dispute you may have, you agree to

4

> first try to resolve the dispute informally by contacting us. If a dispute is not resolved within 30 days of submission, you or Adobe must resolve any claims relating to these terms, the Services, or the Software through final and binding arbitration, except that you may assert claims in small claims court if your claims qualify.
>
> 13.2 **Rules.** If you reside in the Americas, JAMS will administer the arbitration in Santa Clara County, California pursuant to its Comprehensive Arbitration Rules and Procedures. …
>
> 13.3 **No Class Actions.** You may only resolve disputes with us on an individual basis, and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action.

Motion at 3; ECF 16-2 at Section 13 (Dispute Resolution). Adobe did not change the Dispute Resolution procedure in its General Terms of Use between June 18, 2016, when Cooper clicked and accepted those terms, and May 2017, when Cooper used PP2017.1. Motion at 3.

Cooper does not dispute that he viewed and accepted Adobe's General Terms of Use when he used Lightroom. *See generally* Opp'n. Instead, Cooper argues that "Defendant has not shown Plaintiff signed or acknowledged an agreement that included an arbitration provision in connection with his download, license, or use of PP2017.1." Opp'n at 1. In Cooper's view, Adobe has presented evidence showing Cooper agreed to Adobe's General Terms of Use "when he was using an entirely different program," and therefore, "Adobe has fallen far short of meeting its burden to show Plaintiff unambiguously agreed to arbitrate his claims concerning Premiere Pro CC 2017.1." *Id.* at 6.

### III. LEGAL STANDARD

#### A. Motion to Compel

The Federal Arbitrations Act ("FAA") embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (internal quotations and citations omitted). The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In deciding whether to compel arbitration, a district court determines two gateway issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where the parties clearly and unmistakably provide otherwise." *Id.* (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526, 202 L. Ed. 2d 480 (2019). Incorporation of arbitration rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability. *Brennan*, 796 F.3d at 1130; *Caviani v. Mentor Graphics Corp.*, No. 19-CV-01645-EMC, 2019 WL 4470820, at *5 (N.D. Cal. Sept. 18, 2019) ("In [the Ninth] Circuit, incorporation of, *e.g.*, JAMS rules by reference is generally sufficient to provide a basis for … a finding [that there is a clear and unmistakable agreement to delegate the question of arbitrability to the arbitrator].")

### B. Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, courts accept as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, courts need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. DISCUSSION

### A. Request for judicial notice

The Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

In support of its motion, Adobe filed a Request for Incorporation by Reference and Judicial Notice of (1) Premier Pro 11.1.1 Update webpage (hyperlinked and quoted in Compl. ¶ 32), (2) "Avoid Potential Deletion of Media" webpage (hyperlinked and quoted in Compl. ¶ 33), and (3) the full contents of JAMS Comprehensive Arbitration Rules & Procedures, effective July 1, 2014 "JAMS Rules"). ECF 18. JAMS rules are a matter of public record and therefore subject to judicial notice. *See Lou v. Ma Labs., Inc.*, No. C 12-05409 WHA, 2013 WL 2156316, at *1 (N.D. Cal. May 17, 2013) (Taking judicial notice of JAMS Comprehensive Arbitration Rules and Procedure); *Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 16-CV-01864-EMC, 2016 WL 5407898, at *2 (N.D. Cal. Sept. 28, 2016) (taking judicial notice of JAMS rule 11(b)). Cooper does not dispute the authenticity of the public webpage printout referenced in his Complaint. When a plaintiff's complaint reproduces a portion of a webpage, courts may take judicial notice of the full webpage. *See Emeco Indus., Inc. v. Restoration Hardware, Inc.*, No. C-

12-5072 MMC, 2012 WL 6087329, at *1 n.2 (N.D. Cal. Dec. 6, 2012). Accordingly, the Court GRANTS Adobe's request for judicial notice.

**B. Motion to Compel Arbitration**

**i. Formation of Arbitration Agreement**

Cooper argues that Adobe has not carried its burden of showing he agreed to arbitrate his claims. Opp'n at 5. Cooper does not dispute that he agreed to Adobe's General Terms of Use when he used Lightroom. Neither does he challenge that Adobe's General Terms of Use are applicable to all programs within Creative Cloud, including Lightroom and that Premier Pro. Instead, Cooper's sole argument is that Adobe "does not provide any specific evidence that Plaintiff checked any box, or signed or acknowledged any terms of use, ***when he was using Premiere Pro CC 2017.1.***" *Id.* at 6 (emphasis added).

Adobe has provided a declaration by Christian Elgart, a Senior Director of Engineering for Identity and Administration Services within Adobe's Cloud Technology organization. Elgart Decl. ¶ 2, ECF 16-2. Mr. Elgart explains that "customers who wish to download or access any applications or services available through Creative Cloud, including Premiere Pro, must first view Adobe's General Terms of Use and affirmatively click that they agree to those terms before they download or use any such applications or services." *Id.* ¶ 7.

According to Mr. Elgart, "Adobe maintains a database that logs each time a user clicks that he or she accepts the Terms of Use when accessing or downloading a Creative Cloud software program or application." *Id*. ¶ 18. Mr. Elgart "reviewed the log entries on that database that relate to Mr. Cooper" and confirms that "Mr. Cooper was presented with the Terms of Use on June 18, 2016 when he opened the Mac OS version of Lightroom CC, another software program Adobe offers through Creative Cloud …[,] clicked the box and affirmed that 'I have read and agree to' the Terms of Use." *Id.* ¶ 20. Cooper does not challenge the factual statements in Elgart's declaration.

Courts have consistently enforced similar "clickwrap" or "browsewrap" agreements formed on the Internet where the user had actual notice of the agreement or where the user was required—as Cooper was—to affirmatively acknowledge the agreement before proceeding with use of the

8

service. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). Accordingly, Adobe's undisputed Elgart declaration is sufficient to show, by a preponderance of evidence, that an agreement to arbitrate was formed by way of this clickwrap agreement.

Adobe's General Terms of Use "govern [users'] use of [Adobe's] website or services such as the Creative Cloud (collectively, "Services") and software that [Adobe] include[s] as part of the Services, including any applications, Content Files ..., scripts, instruction sets, and any related documentation (collectively "Software")." Motion at 3; ECF 16-2 at Preamble. Cooper argues that his claims concerning PP2017.1 are not subject to arbitration because he entered into an agreement regarding Lightroom, "an entirely different program." Opp'n at 6-7. Cooper's argument misses the mark because disputing the *scope* of an agreement is not the same as disputing the *formation* of one. Cooper does not dispute that he agreed to Adobe's General Terms of Use. Whether or not Cooper's use of PP2017.1 (a software program within Creative Cloud) is covered by Adobe's General Terms of Use, which govern "use of [Adobe's] website or services such as the Creative Cloud (collectively, "Services") and software that [Adobe] include[s] as part of the Services," is a dispute over the *scope* of the agreement. As discussed below, all disputes over the scope of the agreement are delegated to the arbitrator.

### ii. Delegation of Arbitrability

Adobe argues that all issues related to arbitrability are delegated exclusively to the arbitrator, not the Court, because Adobe's General Terms of Use incorporates JAMS Rules. Motion at 7; ECF 16-2 (section 13.2). JAMS Rule 11(b) provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Rule 11(b), ECF 18-3.

The Court agrees. Incorporation of arbitration rules, such as the JAMS rules, constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability. *Brennan* 796 F.3d at 1130. Cooper does not dispute that incorporation of JAMS rules is clear and

9

unmistakable evidence that contracting parties agreed to arbitrate arbitrability. Neither does he disagree that JAMS Rule 11(b) delegates all disputes over the formation, existence, validity, interpretation, or scope of the agreement under which arbitration is sought to the arbitrator. Instead, Cooper asserts that "for the same reasons Adobe has failed to show the parties agreed to arbitrate [meaning, he did not agree to the General Terms of Use in connection with PP2017.1], it has failed to overcome the presumption that the parties did not agree to arbitrate arbitrability." Opp'n at 8.

Cooper's arguments regarding the delegation of arbitrability to the arbitrator fail for the same reasons stated above. Cooper entered into an agreement with Adobe when he accepted Adobe's General Terms of Use. The incorporation of JAMS rules (and specifically Rule 11(b)), means that a dispute over the scope—or even formation, for that matter—of the arbitration agreement is to be decided by the arbitrator.

### iii. Class Action Waiver

Relying on a California Supreme Court decision and a recent Ninth Circuit ruling, Cooper argues that the arbitration and class action waiver provisions in Adobe's General Terms of Use are invalid because they prohibit him from seeking public injunctive relief in any forum. Opp'n at 3. In *McGill*, California Supreme Court decided that a contractual agreement purporting to waive a party's right to seek public injunctive relief in any forum is unenforceable under California law. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 963, 393 P.3d 85, 95 (2017). Recently, in *Blair*, the Ninth Circuit held the FAA does not preempt the California *McGill* rule. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019).

In his third cause of action, Cooper alleges Adobe violated the CLRA and seeks "Injunctive Relief Only." Compl. ¶¶ 118–21. He also seeks to "enjoin [Adobe] from violating the UCL or violating it in the same fashion in the future as discussed [in Cooper's Complaint]." *Id*. at ¶ 131. Therefore, Cooper argues that the Dispute Resolution provision (section 13) in Adobe's General Terms of Use is unenforceable "because it prevents Plaintiff from seeking public injunctive relief in any forum." Opp'n at 4.

For the same reasons discussed above, per JAMS Rule 11(b), it is for the arbitrator to decide

the question of "validity" of the agreement between Cooper and Adobe. *See Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *8 (N.D. Cal. Sept. 11, 2018). That said, the Court notes that in Adobe's General Terms of Use, the arbitration requirement (section 13.1) and class action waiver (section 13.3) are separate provisions, followed by an unambiguous severability clause:

> 16.6 **Severability.** If a particular term is not enforceable, the unenforceability of that term will not affect any other terms.

Reply at 6; ECF 16-2 at Section 16.6. Cooper asserts that the entire Dispute Resolution provision (section 13) is unenforceable under *McGill* and *Blair*. Opp'n at 4. That is for the arbitrator to decide. But, if the arbitrator finds any provision in Adobe's General Terms of Use unenforceable, under *McGill* or for any other reason, section 16.6 of authorizes the arbitrator to sever that provision without affecting other terms in the agreement.

Moreover, *McGill* and *Blair* do not hold that all claims seeking public injunctive relief must be litigated in court. In *Blair*, the claims severed based on *McGill* analysis were litigated in court (and not in arbitration) because the class action waiver provision at issue specifically provided that "[i]f there is a final judicial determination that applicable law precludes enforcement of this Paragraph's limitations as to a particular claim for relief, then that claim (and only that claim) ***must be severed from the arbitration and may be brought in court***." *Blair* 928 F.3d at 823 (emphasis added). In contrast, neither the class action waiver nor the severability provision in Adobe's General Terms of Use contemplate litigation in court instead of arbitration.

Finally, Cooper argues that even if the Court were to uphold the arbitration provision (section 13.1), it should nevertheless invalidate the class action waiver provision (section 13.3), allowing Cooper to "proceed to class action arbitration." Opp'n at 5. But, as discussed above, Cooper and Adobe have agreed that all disputes over validity of the arbitration agreement are to be resolved by the arbitrator. JAMS Rule 11(b). Thus, the arbitrator will decide whether the class action waiver provision is enforceable.

### iv. Unconscionability

In his opposition to Adobe's Motion, Cooper argued that the "Dispute Resolution provision

[in Adobe's General Terms of Use] is also unenforceable because it is procedurally and substantively unconscionable." Opp'n at 8-9. The Court has no cause to address Cooper's unconscionability arguments because they were withdrawn at the September 18, 2019 hearing.

### C. Motion to Dismiss Class Claims

Relying on the class action waiver provision of Adobe's General Terms of Use, Adobe moves to dismiss Cooper's class claims. Motion at 8. According to Adobe, Cooper agreed that he could only resolve disputes with Adobe on an individual basis and could not "bring a claim as a plaintiff or class member in a class, consolidated, or representative action." *Id*. Adobe relies mostly on pre-*McGill*/*Blair* case law to argue that class action waivers in arbitration agreements are enforceable. However, in light of *McGill* and *Blair*, the Court cannot conclude that Cooper is unable to sustain his class action claims or that he has failed to state a claim upon which relief can be granted. *See McGill*, 2 Cal. 5th at 963 (holding that a contractual agreement purporting to waive a party's right to seek public injunctive relief in any forum is unenforceable under California law). As discussed above, it is up to the arbitrator to decide whether the class action waiver provision in Adobe's General Terms of Use is valid. If the arbitrator finds that the class waiver provision is invalid per *McGill*, Cooper's class claims can be adjudicated in arbitration. Accordingly, Adobe's Motion to Dismiss Class Claims is DENIED WITHOUT PREJUDICE.

### D. Motion to Stay All Proceedings

Finally, Adobe requests that the Court stay all proceedings in this litigation pending arbitration. Mot. 9. Cooper opposes a stay. Opp'n at 10 ("In the event the Court decides to compel Plaintiff's claims to arbitration, Plaintiff respectfully requests that it dismiss the case rather than staying it.").

Under the FAA, the courts are authorized to stay proceedings pending arbitration. 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in [the] suit or proceeding is referable to arbitration under [the pertinent] agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...."). In the Ninth Circuit, courts have discretion to stay or dismiss claims subject to a

12

valid arbitration agreement. *Price v. Petaluma Health Ctr.*, No. 17-CV-05428-HSG, 2019 WL 402314, at *2 (N.D. Cal. Jan. 31, 2019) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). But, the "preference [is] for staying an action pending arbitration rather than dismissing it." *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014).

This Court and other courts in this district routinely stay all claims pending arbitration when requested by a party. *See In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018); *Bell-Sparrow v. SFG*Proschoicebeauty*, No. 18-CV-06707-YGR, 2019 WL 1201835, at *9 (N.D. Cal. Mar. 14, 2019); *Taylor*, 2018 WL 4334770, at *8; *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018). That said, "a district court may either stay the action or dismiss it outright when, …, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).

Here, Cooper claims that his use of PP2017.1 is not covered by his agreement with Adobe (Adobe's General Terms of Use), and therefore not subject to arbitration. As discussed, the scope of the agreement is to be determined by the arbitrator—not this Court. Accordingly, the Court has not determined that all of Cooper's claims are subject to arbitration and therefore outright dismissal is not appropriate. The Court STAYS this action pending the completion of arbitration.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Compel Arbitration and STAYS the case pending the outcome of that arbitration. Adobe's Motion to Dismiss Class Claims is DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated: October 11, 2019

_____
BETH LABSON FREEMAN
United States District Judge